DECISION
These cases were consolidated for trial and heard by the Court without the intervention of a jury. The question presented in the Plaintiff's Complaint was the evaluation for tax assessment purposes of the Providence Biltmore Hotel, a property owned by the Plaintiff, Historic Hotel Partners of Providence, LLP. (HHP) The Plaintiffs allege that the Defendant, City of Providence, has over valued the subject property for the tax years 2005, 2006, 2007, 2008, 2009 and 2010 and seeks a refund for the alleged overpayment in taxes.
The parties have stipulated that the values of the subject property were $ 20,100,000 for tax year 2005 and $25,797,000 for tax year 2008.
Therefore the tax years in controversy are for 2006, 2007, 2009, and 2010.
The Plaintiffs first witness was Brian Martin, a partner of New Business Associates, L.P. which is the managing partner of the Plaintiff (HHP). He testified that the subject property was built in 1922, contains 292 guest rooms, 25 of which he testified were extremely small. It contains 17 stories, a seafood restaurant, ballroom and a *Page 2 
Starbucks outlet. He testified that the furnishings of the hotel were not obsolete and that renovations had been done over time however, he felt the fixtures, furniture and equipment were "challenging" as might be expected in a ninety-nine year old hotel. He opined about the general state of the current recession and its effect on the hotel in light of an increased number of, and, newer hotels in the Providence area. All of which has caused an economic downturn for the property.[1]
The parties have stipulated that the values that were determined by the Providence Tax Assessor for the years in controversy are:
Tax Year 2006 (Assessment Date 12/31/2005) $21,747,000
Tax Year 2007 (Assessment Date 12/31/2006) $30,889,400
Tax Year 2008 (Assessment Date 12/31/2008) $30,889,400
Tax Year 2009 (Assessment Date 12/31/2009) $24,953,100

The Plaintiffs presented expert testimony from Ms. Anne Lloyd-Jones of HVS Consulting and Valuation Services. Ms. Lloyd-Jones has specialized in hotel evaluations. She has testified in over twenty jurisdictions and appraised over 5000 hotels nationally and internationally.
The Defendant presented Peter M. Scotti of Providence, a real estate broker and appraiser with 36 years of experience with a wide range of expertise in residential, commercial and hotel valuations throughout the Northeast region.
Both witnesses were well credentialed and were able to testify without objection.
It was conceded by Mr. Scotti that the City's assessment figures for the years in controversy, 2006, 2007 and 2009 were over-assessed by the Defendant. Mr. Scotti testified that the 2010 assessment was correct in his opinion. *Page 3 
The respective values as testified to by Ms. Lloyd-Jones and Mr. Scotti as well as the Defendant's assessments for the years in question are as follows:
Tax Year Assessment Scotti Value Ms. Lloyd-Jones Value
 (July 22, 2011)
2006 $21,747,000 $21,742,000 $18,000,000
2007 $30,889,400 $24,018,000 $21,400,000
2009 $30,889,400 $25,359,000 $20,100,000
2010 $24,953,100 $26,825,000 $14,200,000

The burden of proof is on the Plaintiff to prove that the subject property was over-assessed by the Defendant. That proof must be by a fair preponderance of the credible evidence.
Rhode Island General Laws 1956 § 44-5-12 authorizes the tax assessor of a city or town to tax property within its jurisdiction at its full and fair cash value or at a uniform percentage of that value, not to exceed one-hundred percent (100%).
If the Court determines that the Plaintiff has proven that the assessments set by the Defendant exceeds the fair market value of the subject property, then the Plaintiff is entitled to a refund of excess taxes paid plus interest and costs pursuant to R.I.G.L. § 44-5-30.
At issue, as is usual in these cases, is the difference of professional opinion between the two qualified experts.
There were six (6) different appraisals or valuations introduced into this case.
Ms. Lloyd-Jones' report of July 22, 2011 upon which she principally relied used the direct capitalization approach. Her appraisal of August 22, 2010 utilized the discounted cash flow method which estimates income over a hypothetical ten-year period. *Page 4 
The Defendant introduced an April 6, 2009 report done by a company owned by HVC on the subject property. A report that the Defendant avers should have been disclosed to the Plaintiff pursuant to the Uniform Standard of Professional Appraisal Practice (USPAP). The Plaintiff counters that the company Ultimate Parking Solutions is owned by HVC — it operates as a completely separate entity. This April 6, 2009 report utilized the income capitalization approach for the year 2010.
The third report prepared by the Plaintiff is a February 15, 2011 report based on actual figures of income received from the hotel and used to project income for the first year of the hypothetical ten-year holding period of projected income.
Mr. Scotti prepared two reports using the income capitalization report, one dated February 10, 2011 for tax years 2005 through 2010 and an appraisal dated February 15, 2011 using the income capitalization report for tax year 2010. (see attached Exhibit 1)
The principal differences between the appraisers, Ms. Lloyd-Jones and Mr. Scotti are the respective witnesses' treatment of deductions for furniture, fixtures and equipment and their treatment of capital deduction expenditures for renovations.
Ms. Lloyd-Jones calculated four-percent (4%) reserve for the replacement of fixtures, furniture and equipment for each tax year while Mr. Scotti allowed only a two-percent (2%) reserve. Ms. Lloyd-Jones deducted $4,890,000 from her appraisal for capital expenditures expense to upgrade the hotel. Mr. Scotti did not allow a figure for this renovation at all.
Mr. Scotti used net income figures contained in the net income analysis of the subject property as presented in the HVS appraisal of April 6, 2009. The Plaintiff believes these figures are not representative of true income for tax year 2010 and are not *Page 5 
reflective of actual income. Ms. Lloyd-Jones utilized actual net income figures provided to her by the Plaintiff for the same tax year. Mr. Scotti also utilized figures from a national real estate survey that is widely used in the industry and urges this Court to rely on these figures.
The biggest difference in the respective opinions of the witnesses lies in their valuation of the subject property for the tax year 2010.
The Defendant City's assessment for 2010 is $25,953,100. Mr. Scotti has appraised the property at $26,825,000, while Ms. Lloyd-Jones has valued the property at $14,200,000, a difference of $12,683,000.
Mr. Scotti testified that the valuation of Ms. Lloyd-Jones of $14,200,000 for 2010 defies logic and his knowledge and experience in the real estate market in this area. He testified that at that rate, the sales price of an individual room at the subject property would be only $48,630 per room, based on 292 guest rooms. He testified that the Providence Marriot Courtyard Hotel, across from the subject property sold in February 2007 for $53,049,000 or $245,597 per guest room. This sale, while remote in time from 2010 in conjunction with Mr. Scotti's testimony regarding local office space selling at more than $50 per square foot over the last seven years, combined with a recent offer to buy a lower tier hotel "Sportsman's Inn Hotel", for $75 per foot, makes in Mr. Scotti's opinion, a sale of the subject property at $44 per square foot in 2010 (which is based on Ms. Lloyd-Jones appraisal of $14,200,000) to be totally unreasonable and untenable.
Ms. Lloyd-Jones counters with testimony that there is no reliable correlation between the value of office space and hotel guest rooms. The Marriot sale in 2007 preceded the current recession which has caused a dramatic economic downturn and *Page 6 
should not be considered. Similarly, she testified that the Sportsman Inn sale if completed would be some 15 months after the tax assessment date of December 31, 2009.
The expert witnesses opined on the state of the economy, the net operating income and ten year income projections of the subject property and the adjustments made to these figures for capital expenditures and reserves for replacement of furniture, fixtures and equipment.
In analyzing the mass of testimony of these two qualified experts it is obvious that the major differences in valuation for the tax years in question concerns itself with the difference of opinion regarding the reserve deducted for replacement of furniture, fixtures and equipment and for the major deduction for capital improvements taken by Ms. Lloyd-Jones for future renovations of the subject property.
As indicated earlier, Mr. Scotti deducted two-percent (2%) and Ms. Lloyd-Jones four-percent (4%) for the replacement of furniture, fixtures and equipment. Ms. Lloyd-Jones testified that the industry standard for this replacement was actually five-percent (5%) however she elected to use four-percent (4%) instead.
Mr. Scotti in deducting two-percent (2%) testified that he believed that the four-percent (4%) deduction advocated by Ms. Lloyd-Jones was in effect double-dipping, which is deducting twice for the same expense. Ms. Lloyd-Jones, he avers, deducted the value of the personal property in the subject property at over $3 million dollars and then deducted four-percent (4%) for its replacement. Ms. Lloyd-Jones testified that her value of the subject property contained the value of the personal property and that her four-percent (4%) deduction was a set-aside for its eventual replacement. *Page 7 
Mr. Scotti also testified that he made no deduction for contemplated capital expenditures and opined that Ms. Lloyd-Jones' $4,890,000 deduction if allowed would never be expended in a single tax year but would be expended over a number of years.
Mr. Scotti did concede that if his two-percent (2%) deduction for replacement of the furniture, fixtures and equipment of the subject property was not accepted by the Court that his valuations for the years in question would be lower by $2 to $3 million dollars for each year in contention.
In this case with regard to the assessments of December 31, 2004 and December 31, 2007 for the tax years 2005 and 2008, the parties have stipulated that the valuation of the subject property was $20,100,000 for 2005 and $25,797,000 for 2008. In each year the assessed value by the Defendant exceeded the agreed value. Thus a refund is due the Plaintiff for these tax years and will be addressed below.
With respect to tax years 2006, 2007, 2009 and 2010, based on a review of the testimony of all the witnesses in this case, particularly the testimony of Mr. Peter M. Scott and Ms. Anne Lloyd-Jones, this Court makes the following finding of facts and conclusions of law.
That the subject property, the Providence Biltmore Hotel is a venerable commercial hotel in existence for ninety-nine (99) years. It is an aging and in some ways sub-standard in it room configuration and HVAC systems (25 extremely small guest rooms and a two pipe heating and cooling system instead of the industry standard four pipe system).
That the economy of the State of Rhode Island and nationally has been in the throes of a difficult recession beginning at or about the 2007 tax year period and *Page 8 
continuing through 2010 and beyond. That these economic factors in conjunction with the construction of newer and more up-to-date hotel facilities in the Providence metro area has caused a gradual, measurable decline in the net operating income of the subject property. A combination of these conditions has had an adverse effect on the market value of the subject property.
The Court in evaluating the opinions of the two experts in this case has determined that based upon the evidence concerning the percentage deducted on a yearly basis for the replacement of furniture, fixtures and equipment of the subject property that the four-percent (4%) figure utilized by Ms. Lloyd-Jones is appropriate and reasonable. In her testimony as a qualified hotel appraiser the Court finds the methodology to substantiate this deduction was credible and reliable. The Court does not agree that Mr. Scotti's deduction of two-percent (2%) is adequate or reasonable under the totality of the circumstances and finds that the four-percent (4%) figure propounded by Ms. Lloyd-Jones is not a double-dipping deduction.
The Court finds that the April 2009 figures of the HVC report or net operating income were predicated on the four-percent (4%) annual deduction as claimed by the Plaintiff and was the report Mr. Scotti relied upon in determining the net operating income of the subject property.
With regard to the 2010 valuation and the respective valuations by both experts the Court finds that Mr. Scotti's valuation of $26,825,000 is incorrect based on the prevailing economic condition of the time as indicated supra and the Net Operating Income projections relied upon. It defies logic and evidence in this case to assume that the subject property would gain approximately $3.5 million in value between tax year *Page 9 
2009 and 2010 — The Court also concludes that the figure for 2010 of Ms. Lloyd Jones is not appropriate. That the Court finds that Mr. Scotti's testimony regarding general market conditions in the Providence area, to be more persuasive and more probable than the value established by Ms. Lloyd Jones.
Similarly, in light of all the facts and circumstances considered by the Court, the Court finds the $4,890,000 capital deduction taken by Ms. Lloyd-Jones to be speculative and not supported by the evidence as presented in this case with regard to the valuation of the subject property for the tax year 2010.
In light of these findings of fact and conclusions of law the Court determines the valuation of the subject property for the tax years stipulated by the parties and for the tax years in controversy to be as follows (See chart attached for award for each tax year at issue.)
The total award to the Plaintiff for an over-assessment is $889,214 plus interest and costs. Counsel may present an order consistent with this Decision. *Page 10 
 JOURNAL AWARD FOR PLAINTIFF
 City Scotti Lloyd-Jones Court Tax Award to
Tax Year Valuation Valuation Valuation Valuation Difference Rate Plaintiff Notes
2005 21,019,000 — — *20,100,000 919,000 .03772 34,665 * Stipulated Value
2006 21,747,000 21,742,000 18,000,000 20,000,000 1,747,000 .02699 65,897
2007 30,889,400 24,019,000 21,400,000 23,4000,000 7,489,400 .02699 202,139
2008 30,889,400 — — *25,797,000 5,092,400 .02800 142,587.20 * Stipulated Value
2009 30,889,400 25,359,000 20,100,000 22.500,000 8,389,400 .02860 239,937
2010 24,953,100 26,825,000 14,200,00 18,900,000 6,053,100 .03370 203,989
 889,214 Total Award
 *Page 11 
 EXHIBIT I Biltmore Hotel List of Appraisal Reports
Date of Report Author Valuation Technique(s) Valuation Date Conclusion of Value
 (excluding personal
 property)
April 6, 2009 HVS Income Capitalization (DCF) March 19, 2009 $20,023,000
 and Sales Comparison
July 22, 2010 HVS Income (Direct Capitalization) December 31, 2004 20,100,000
 December 31, 2005 18,000,000
 December 31, 2006 21,400,000
 December 31, 2007 26,600,000
 December 31, 2008 20,100,000
 December 31, 2009 14,200,000
August 11, 2010 HVS Income Capitalization (DCF) July 1, 2010 14,500,000
 and Sales Comparison
February 15, 2011 HVS Income Capitalization (DCF) December 31, 2009 13,094,500
February 10, 2011 Scotti Income Capitalization (DCF) December 31, 2004 20,222,000
 December 31, 2005 21,742,000
 December 31, 2006 24,017,000
 December 31, 2007 25,796,000
 December 31, 2008 25,358,000
 December 31, 2009 26,825,000
February 15, 2011 Scotti Income Capitalization (DCF) December 31, 2009 25,236,000 and
 23,288,000

[1] Between the time of this trial and this Decision, the Hotel has been placed in receivership in Superior Court. *Page 1